**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **PAPST LICENSING GMBH & CO. KG,**<br><br>**Plaintiff,**<br>**v.**<br>**SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 6:15-cv-1102**<br><br>**Jury Trial Demanded** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Papst Licensing GmbH & Co., KG ("Papst Licensing" or "Plaintiff") files this First Amended Complaint against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendant") for infringement of U.S. Patent Nos. 6,470,399 (the "'399 Patent"); 6,895,449 (the "'449 Patent"); 8,504,746 (the "'746 Patent"); 8,966,144 ("'144 Patent"); and 9,189,437 (the "'437 Patent") (collectively, the "Patents").

## I. PARTIES

1. Plaintiff Papst Licensing is a company existing under the laws of the Federal Republic of Germany, with its principal place of business located at Bahnofstrasse 33, 78112 St. Georgen, Germany.

2. Upon information and belief, Samsung Electronics Co., Ltd. (individually, "SEC"), is a corporation organized under the laws of Korea, with its principal place of business located at 416 Maetan3-Dong, Yeongtong-Gu, Suwon-Shi, South Korea, where it can be served with process. Upon information and belief, SEC is authorized to do business in Texas. On information and belief, SEC is South Korea's largest company and one of Asia's largest electronics companies. SEC designs, manufactures, and provides to the U.S. and world markets a wide range of products,

including consumer electronics, computer components, and myriad mobile and entertainment products.

3. Upon information and belief, Samsung Electronics America, Inc. (individually, "SEA"), is a corporation organized under the laws of the State of New York with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. Upon information and belief, SEA is authorized to do business in Texas. SEA may be served by serving its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. On information and belief, SEA was formed in 1977 as a subsidiary of SEC and markets, sells, and/or offers for sale a variety of consumer electronics, including TVs, VCRs, DVD and MP3 players, and video cameras, as well as memory chips and computer accessories, such as printers, monitors, hard disk drives, and DVD/CD-ROM drives.

4. Upon information and belief, prior to January 1, 2015, Samsung Telecommunications America, LLC (individually, "STA") was a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082. STA was founded in 1996 as a subsidiary of SEC and marketed, sold, and/or offered for sale a variety of personal and business communications devices in the United States, including cell phones. Effective January 1, 2015 STA merged with and into SEA, and therefore, STA ceased to exist as a separate entity. As a result of the merger, SEA has assumed all liability of STA arising out of this action. Upon information and belief, SEA maintains a significant presence in Richardson, Texas.

## II. JURISDICTION AND VENUE

5. This is an action for patent infringement which arises under 35 U.S.C. §§ 271, 281, 284 and 285. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a).

6. This Court has personal jurisdiction over Samsung, and venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400. This Court has personal jurisdiction over Samsung because, among other things, Samsung has established minimum contacts within the forum such that the exercise of jurisdiction over Samsung will not offend traditional notions of fair play and substantial justice. For example, Samsung has placed products that practice and/or embody the claimed inventions of the Patents into the stream of commerce with the reasonable expectation and/or knowledge that purchasers and users of such products were located within this district. In addition, Samsung has sold, advertised, marketed, and distributed products in this district that practice the claimed inventions of the Patents. Samsung derives substantial revenue from the sale of infringing products distributed within the district, and/or expects or should reasonably expect its actions to have consequences within the district, and derive substantial revenue from interstate and international commerce.

## III. FACTUAL BACKGROUND

7. The name Papst has been closely associated with patents and the protection of intellectual property for over seventy years. Hermann Papst was an engineer and inventor who was responsible for over four hundred patents in a variety of technical fields. Mr. Hermann Papst's licensure of a patent pertaining to loudspeakers enabled him to launch Papst-Motoren GmbH & Co. KG—a business that generated over six hundred patents on in-house products such as small electric motors and cooling fans. In 1992, Papst-Motoren's patent portfolio was sold to Papst

Licensing, a company founded by Mr. Hermann Papst's son, Mr. Georg Papst. Papst Licensing is a patent licensing company protecting its own and others' intellectual property rights. After Hermann Papst's death in 1981 and the passing of Georg Papst in 2012, the family business is now run by the third generation of Papsts.

8. The '399 Patent was filed on March 3, 1998 and issued on October 22, 2002. The '746 Patent was filed on September 27, 2010 and issued on August 6, 2013. The '449 Patent was filed on August 15, 2002 and issued on May 17, 2005. The '144 Patent was filed on August 24, 2006 and issued on February 24, 2015. The '437 Patent was filed on August 24, 2006 and issued on November 17, 2015. The '399, '449, '746, '144 and '437 Patents are generally directed towards methods and systems for the transfer of data and in particular to interface devices for communication between a computer or host device and a data transmit/receive device from which data is to be acquired or with which two-way communication is to take place.

9. Papst Licensing acquired the Patents through its predecessor-in-interest, Labortechnik Tasler GmbH—a pioneer and leader in the area of interface devices and software.

10. Plaintiff Papst Licensing has obtained all substantial right and interest to the Patents, including all rights to recover for all past and future infringements thereof.

11. On or around March 14, 2006, Papst Licensing notified Samsung of certain Papst Licensing patents, specifically including the '399 Patent and '449 Patent and its infringement thereof. On or around August 7, 2013, Papst Licensing notified Samsung of its infringement of the '746 Patent. On or around March 13, 2015, Papst Licensing notified Samsung of its infringement of the '144 Patent.

12. On information and belief, Samsung has monitored Papst's patent prosecution activities at least since being notified of its infringement. In all events, Samsung has knowledge of

the ’399, ’449, ’746, ’144 and ’437 Patents by virtue of service of the original complaint and this amended complaint.

13. Samsung has infringed and continues to infringe the Papst Patents by making, selling, offering for sale, importing, and using products and software in an infringing manner, including but not limited to Samsung’s smartphone, mobile phone, tablet and media player products, as well as any other products operating in a substantially similar manner. Moreover, Samsung provides its customers with the accused software and instructs its customers to use the software in an infringing manner, including through its website at http://www.samsung.com/us/support/downloads.

14. In addition, Samsung knowingly, actively induced and continues to knowingly actively induce (or is willfully blind to the) infringement of one or more of the Patents within this district by making, using, offering for sale, and selling infringing products, as well as by contracting with others to use, market, sell, and offer to sell infringing products, all with knowledge of the asserted Patents, and their claims, with knowledge that their customers will use, market, sell, and offer to sell infringing products in this district and elsewhere in the United States, and with the knowledge and specific intent to encourage and facilitate infringing sales and use of the products by others within this district and the United States by creating and disseminating promotional and marketing materials, instructional materials, and product manuals, and technical materials related to the infringing products.

15. Moreover, Samsung knowingly contributed to the infringement of one or more of the Patents by others in this district, and continues to contribute to the infringement of one or more of the Patents by others in this district by selling or offering to sell components of infringing products in this district, which components constitute a material part of the inventions of the

Patents, knowing of the Patents and their claims, knowing those components to be especially made or especially adapted for use to infringe one or more of the Patents, and knowing that those components are not staple articles or commodities of commerce suitable for substantial non-infringing use.

16. The limitations of claims of the Patents may be satisfied by hardware, software, and/or firmware, or any combination thereof, including without limitation: connection to a host computer, including an input/output (I/O) port (including a USB interface), a Bluetooth wireless connection and/or other physical layer connection where supported; circuitry for the connection of the USB interface to the logic board and processor; a processor; program memory, including the ability to store software instructions related to the operation of the device when capturing a photo and/or video, transferring photos and/or videos from the device to a host computer, as well as other functions associated with modern day cellular phones and/or smart phones; data storage memory, including the ability to store photos and/or videos captured by the device's digital camera in memory; one or more cameras (or image capture) devices; a sensor designed to transmit data, which includes the device's one or more CMOS arrays as well as an analog to digital converter, USB interface and other hardware, firmware and software related to the transmission of data; software that specially adapts the device to: cause at least one parameter which provides identification information regarding the Accused Devices to be automatically sent through the I/O port and to the multi-purpose interface of the computer; software that specially adapts the device to be compliant with or use the protocol specifications for Picture Transfer Protocol ("PTP"), Media Transfer Protocol ("MTP") and Mass Storage Device/Mass Storage Class ("MSD"), including being capable of receiving, understanding and responding to PTP, MTP and/or MSD commands when the I/O port is operatively interfaced with the host; software that specially adapts

the device to execute at least one other instruction set stored in the program memory and thereby causes at least one file of digitized analog data to be transferred to the computer regardless of the identity of the manufacturer of the computer and without requiring any user-loaded file transfer enabling software to be loaded on or installed in the computer at any time (collectively, "Components").

## IV. PATENT INFRINGEMENT

### COUNT I — INFRINGEMENT OF U.S. PATENT NO. 6,470,399

17. Papst Licensing is the assignee of the '399 Patent, entitled "Flexible Interface For Communication Between A Host And An Analog I/O Device Connected To The Interface Regardless The Type Of The I/O Device," and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

18. The '399 Patent is valid and enforceable.

19. Samsung has directly infringed and continues to infringe one or more claims of the '399 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing, using, offering for sale, and/or selling the claimed system and methods of the '399 Patent. At a minimum, Samsung has been, and now is, infringing claims of the '399 Patent by making, importing and/or using infringing systems and/or methods. Samsung's infringing products include, but are not limited to, Samsung's smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTP, MTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or

another physical layer connection where supported) ("'399 Infringing Products"). Papst Licensing alleges that each and every element is literally present in the '399 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

20. Samsung has indirectly infringed and continues to infringe the '399 Patent by inducing the infringement of the '399 Patent. With knowledge of the '399 Patent, Samsung directs and aids its customers in using the '399 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the '399 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. *See* Exhibit 1 at 126 (instructing a user to "connect your phone to the computer with a USB cable"). *See also* Exhibit 2 at 136 (instructing a user to "connect your device to your computer using a compatible USB cable") and Exhibit 3 at 31 (instructing the user to "connect the device to the computer using the USB cable" in order to connect the device "as a media device").

Samsung similarly instructs users of other '399 Infringing Products to transfer data. When a user of the '399 Infringing Products connects the product to a host computer based on Samsung's instructions, the PTP[1], MTP[2], and/or MSD[3] transfer protocols are used by the '399 Infringing

[1] Exhibit 1 at 126; Exhibit 3 at 31.
[2] Exhibit 1 at 126; Exhibit 3 at 31.
[3] Exhibit 2 at 135-136.

Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

21. Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’399 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’399 Infringing Products. Samsung knows that the Components of the ’399 Infringing Products: constitute a material part of the inventions claimed in the ’399 Patent; are especially made or adapted to infringe the ’399 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the ’399 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

22. Papst Licensing has been damaged as a result of Samsung’s infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,895,449**

23. Papst Licensing is the assignee of the ’449 Patent, entitled “Flexible Interface For Communication Between A Host And An Analog I/O Device Connected To The Interface Regardless The Type Of The I/O Device,” and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to

enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

24. The ’449 Patent is valid and enforceable.

25. Samsung has directly infringed and continues to infringe one or more claims of the ’449 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing using, offering for sale, and/or selling the claimed systems and methods. At a minimum, Samsung has been, and now is, infringing claims of the ’449 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung’s infringing products include, but are not limited to, Samsung’s smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications MSD and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) (“’449 Infringing Products”). Papst Licensing alleges that each and every element is literally present in the ’449 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

26. Samsung has indirectly infringed and continues to infringe the ’449 Patent by inducing the infringement of the ’449 Patent. With knowledge of the ’449 Patent, Samsung directs and aids its customers in using the ’449 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’449 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the

phone to a computer using a USB cable. *See* Exhibit 1 at 126 (instructing a user to "attach your phone to the computer with a USB data cable"). *See also* Exhibit 2 at 136 (instructing a user to "connect your device to your computer using a compatible USB cable") and Exhibit 3 at 31 (instructing the user to "connect the device to the computer using the USB cable" in order to connect the device "as a media device").

Samsung similarly instructs users of other '449 Infringing Products to transfer data. When a user of the '449 Infringing Products connects the product to a host computer based on Samsung's instructions, the MSD[4] transfer protocol is used by the '449 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

27. Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the '449 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the '449 Infringing Products. Samsung knows that the Components of the '449 Infringing Products: constitute a material part of the inventions claimed in the '449 Patent; are especially made or adapted to infringe the '449 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the '449 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

[4] Exhibit 2 at 135-136.

28. Papst Licensing has been damaged as a result of Samsung's infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III — INFRINGEMENT OF U.S. PATENT NO. 8,504,746**

29. Papst Licensing is the assignee of the '746 Patent, entitled "Analog Data Generating And Processing Device For Use With A Personal Computer," and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

30. The '746 Patent is valid and enforceable.

31. Samsung has directly infringed and continues to infringe one or more claims of the '746 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing using, offering for sale, and/or selling the claimed systems and methods. At a minimum, Samsung has been, and now is, infringing claims of the '746 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung's infringing products include, but are not limited to, Samsung's smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTP, MTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) ("'746 Infringing Products"). Papst Licensing alleges that each and every element is literally present in the '746 Infringing Products. To the

extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

32. Samsung has indirectly infringed and continues to infringe the ’746 Patent by inducing the infringement of the ’746 Patent. With knowledge of the ’746 Patent, Samsung directs and aids its customers in using the ’746 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’746 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. *See* Exhibit 1 at 126 (instructing a user to “attach your phone to the computer with a USB data cable”). *See also* Exhibit 2 at 136 (instructing a user to “connect your device to your computer using a compatible USB cable”) and Exhibit 3 at 31 (instructing the user to “connect the device to the computer using the USB cable” in order to connect the device “as a media device”).

Samsung similarly instructs users of other ’746 Infringing Products to transfer data. When a user of the ’746 Infringing Products connects the product to a host computer based on Samsung’s instructions, the PTP[5], MTP[6], and/or MSD[7] transfer protocols are used by the ’746 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

[5] Exhibit 1 at 126; Exhibit 3 at 31.
[6] Exhibit 1 at 126; Exhibit 3 at 31.
[7] Exhibit 2 at 135-136.

33. Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’746 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’746 Infringing Products. Samsung knows that the Components of the ’746 Infringing Products: constitute a material part of the inventions claimed in the ’746 Patent; are especially made or adapted to infringe the ’746 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the ’746 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

34. Papst Licensing has been damaged as a result of Samsung’s infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV — INFRINGEMENT OF U.S. PATENT NO. 8,966,144

35. Papst Licensing is the assignee of the ’144 Patent, entitled “Analog Data Generating And Processing Device Having A Multi-Use Automatic Processor,” and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

36. The ’144 Patent is valid and enforceable.

37. Samsung has directly infringed and continues to infringe one or more claims of the ’144 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing, using, offering for sale, and/or selling the claimed system and methods of the ’144 Patent. At a minimum, Samsung has been, and now is, infringing claims of the ’144 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung’s infringing products include, but are not limited to, Samsung’s smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTP, MTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) (“’144 Infringing Products”). Papst Licensing alleges that each and every element is literally present in the ’144 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

38. Samsung has indirectly infringed and continues to infringe the ’144 Patent by inducing the infringement of the ’144 Patent. With knowledge of the ’144 Patent, Samsung directs and aids its customers in using the ’144 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’144 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. *See* Exhibit 1 at 126 (instructing a user to “attach your phone to the computer with a USB data cable”). *See also* Exhibit 2 at 136 (instructing a user to

"connect your device to your computer using a compatible USB cable") and Exhibit 3 at 31 (instructing the user to "connect the device to the computer using the USB cable" in order to connect the device "as a media device").

Samsung similarly instructs users of other '144 Infringing Products to transfer data. When a user of the '144 Infringing Products connects the product to a host computer based on Samsung's instructions, the PTP[8], MTP[9], and/or MSD[10] transfer protocols are used by the '144 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

39. Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the '144 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the '144 Infringing Products. Samsung knows that the Components of the '144 Infringing Products: constitute a material part of the inventions claimed in the '144 Patent; are especially made or adapted to infringe the '144 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the '144 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

---

[8] Exhibit 1 at 126; Exhibit 3 at 31.
[9] Exhibit 1 at 126; Exhibit 3 at 31.
[10] Exhibit 2 at 135-136.

40. Papst Licensing has been damaged as a result of Samsung's infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V — INFRINGEMENT OF U.S. PATENT NO. 9,189,437**

41. Papst Licensing is the assignee of the '437 Patent, entitled "Analog Data Generating And Processing Device For Use With A Personal Computer," and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

42. The '437 Patent is valid and enforceable.

43. Samsung has directly infringed and continues to infringe one or more claims of the '437 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing using, offering for sale, and/or selling the claimed systems and methods. At a minimum, Samsung has been, and now is, infringing claims of the '437 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung's infringing products include, but are not limited to, Samsung's smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTPMTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) ("'437 Infringing Products"). Papst Licensing alleges that each and every element is literally present in the '437 Infringing Products. To the

extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

44. Samsung has indirectly infringed and continues to infringe the ’437 Patent by inducing the infringement of the ’437 Patent. With knowledge of the ’437 Patent, Samsung directs and aids its customers in using the ’437 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. *See* Exhibit 1 at 126 (instructing a user to “attach your phone to the computer with a USB data cable”). *See also* Exhibit 2 at 136 (instructing a user to “connect your device to your computer using a compatible USB cable”) and Exhibit 3 at 31 (instructing the user to “connect the device to the computer using the USB cable” in order to connect the device “as a media device”).

Samsung similarly instructs users of other ’437 Infringing Products to transfer data. When a user of the ’437 Infringing Products connects the product to a host computer based on Samsung’s instructions, the PTP[11], MTP[12], and/or MSD[13] transfer protocols are used by the ’437 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

45. Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’437 Patent under 35 U.S.C. § 271(c) and/or 271(f),

[11] Exhibit 1 at 126; Exhibit 3 at 31.
[12] Exhibit 1 at 126; Exhibit 3 at 31.
[13] Exhibit 2 at 135-136.

either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’437 Infringing Products. Samsung knows that the Components of the ’437 Infringing Products: constitute a material part of the inventions claimed in the ’437 Patent; are especially made or adapted to infringe the ’437 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the ’437 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

46. Papst Licensing has been damaged as a result of Samsung’s infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## V. WILLFULNESS

47. Papst Licensing alleges upon information and belief that Samsung has knowingly or with reckless disregard willfully infringed the ’399, ’449, ’746 and ’144 Patents. Samsung’s knowledge includes knowledge of the ’399, ’449, ’746 and ’144 Patents by virtue of Papst Licensing having notified Samsung of its infringing acts. Samsung acted with knowledge of the ’399, ’449, ’746 and ’144 Patents and despite an objectively high likelihood that its actions constituted infringement of Papst Licensing’s valid patent rights.

48. This objectively-defined risk was either known or so obvious that is should have been known to Samsung. Papst Licensing seeks enhanced damages pursuant to 35 U.S.C. §284.

## VI. JURY DEMAND

49. Papst Licensing demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Papst Licensing prays for judgment and seeks relief against Samsung as follows:

a. Judgment that one or more claims of U.S. Patent Nos. 6,470,399; 6,895,449; 8,504,746; 8,966,144; and 9,189,437 have been infringed, either literally and/or under the doctrine of equivalents, by Samsung ;

b. Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Samsung of the Patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

c. That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

d. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: April 4, 2016

Respectfully submitted,

*/s/ Adam G. Price*

Christopher V. Goodpastor
Texas State Bar No. 00791991
LEAD ATTORNEY
Andrew G. DiNovo
Texas State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
Jay D. Ellwanger
Texas State Bar No. 24036522
**DiNovo Price Ellwanger & Hardy LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Telecopier: (512) 539-2627
cgoodpastor@dpelaw.com
adinovo@dpelaw.com
aprice@dpelaw.com
jellwanger@dpelaw.com

**ATTORNEYS FOR PLAINTIFF**
**PAPST LICENSING GMBH & CO. KG**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of April 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Adam G. Price*
Adam G. Price