IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

Papst Licensing GmbH & Co. KG,

Plaintiff,

v.

Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.,

Defendants.

**Civil Action No. 6:15-cv-1102**

**JURY TRIAL DEMANDED**

---

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.'S, AND SAMSUNG ELECTRONICS AMERICA, INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT**

---

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA"), by and through their undersigned counsel, hereby submit their Answer and Defenses in response to Plaintiff's First Amended Complaint ("the Amended Complaint") for alleged infringement of U.S. Patent Nos. 6,470,399 (the "'399 Patent"); 6,895,449 (the "'449 Patent"); 8,504,746 (the "'746 Patent"); 8,966,144 (the "'144 Patent"); and 9,189,437 (the "'437 Patent") (collectively, the "Patents" or "Patents-in-Suit"). SEC and SEA deny each and every allegation, statement, and/or assert in the Amended Complaint unless expressly admitted herein.

## GENERAL DENIAL

SEC and SEA deny the allegations in Papst's Amended Complaint unless expressly admitted in the following paragraphs.

## I. PARTIES

**1.** Plaintiff Papst Licensing is a company existing under the laws of the Federal Republic of Germany, with its principal place of business located at Bahnofstrasse 33, 78112 St. Georgen, Germany.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 1 of the Amended Complaint and therefore deny them.

**2.** Upon information and belief, Samsung Electronics Co., Ltd. (individually, "SEC"), is a corporation organized under the laws of Korea, with its principal place of business located at 416 Maetan3-Dong, Yeongtong-Gu, Suwon-Shi, South Korea, where it can be served with process. Upon information and belief, SEC is authorized to do business in Texas. On information and belief, SEC is South Korea's largest company and one of Asia's largest electronics companies. SEC designs, manufactures, and provides to the U.S. and world markets a wide range of products, including consumer electronics, computer components, and myriad mobile and entertainment products.

**Answer:** SEC and SEA admit that SEC is a corporation organized under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro (Maetan-dong), Yeongtong-gu, Suwon-Si, Gyeonggi-do 443-742, Korea. SEC and SEA admit that SEC designs and manufactures a wide range of products, including consumer electronics, computer components, and mobile and entertainment products. SEC and SEA deny the remaining or contrary allegations of paragraph 2 of the Amended Complaint.

**3.** Upon information and belief, Samsung Electronics America, Inc. (individually, "SEA"), is a corporation organized under the laws of the State of New York with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. Upon information and belief, SEA is authorized to do business in Texas. SEA may be served by serving its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. On information and belief, SEA was formed in 1977 as a subsidiary of SEC and markets, sells, and/or offers for sale a variety of consumer electronics, including TVs, VCRs, DVD and

MP3 players, and video cameras, as well as memory chips and computer accessories, such as printers, monitors, hard disk drives, and DVD/CD-ROM drives.

**<u>Answer:</u>** SEC and SEA admit that SEA is a corporation organized under the laws of the State of New York with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. SEC and SEA further admit that SEA is authorized to do business in Texas and may be served by serving its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. SEC and SEA further admit that SEA is a subsidiary of SEC and that it markets, sells, and/or offers for sale a variety of consumer electronics, including TVs, DVD players, and video cameras, as well as memory chips and computer accessories, such as printers, monitors, and hard disk drives. SEC and SEA deny the remaining allegations of paragraph 3 of the Amended Complaint.

**4.** Upon information and belief, prior to January 1, 2015, Samsung Telecommunications America, LLC (individually, "STA") was a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082. STA was founded in 1996 as a subsidiary of SEC and marketed, sold, and/or offered for sale a variety of personal and business communications devices in the United States, including cell phones. Effective January 1, 2015 STA merged with and into SEA, and therefore, STA ceased to exist as a separate entity. As a result of the merger, SEA has assumed all liability of STA arising out of this action. Upon information and belief, SEA maintains a significant presence in Richardson, Texas.

**<u>Answer:</u>** SEC and SEA admit that, prior to January 1, 2015, Samsung Telecommunications America, LLC (individually, "STA") was a Delaware limited liability company with a principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082. SEC and SEA further admit that STA was founded as a subsidiary of SEC and that STA conducted business in the United States with respect to a variety of personal and business communications devices, including cell phones. SEC and SEA further admit that, effective January 1, 2015, STA merged with and into SEA, and therefore, STA ceased to exist as a

separate entity. SEC and SEA further admit that SEA maintains a presence in Richardson, Texas. SEC and SEA deny the remaining allegations of paragraph 4 of the Amended Complaint.

## II. JURISDICTION AND VENUE

**5.** This is an action for patent infringement which arises under 35 U.S.C. §§ 271, 281, 284 and 285. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a).

**Answer:** SEC and SEA admit that Plaintiff's allegations of patent infringement purport to arise under the patent laws of the United States, Title 35 of the United States Code, including 35 U.S.C. §§ 271, 281, 284 and 285, but denies that such allegations are meritorious. SEC and SEA admits that, for the purposes of this action only, this Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**6.** This Court has personal jurisdiction over Samsung, and venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400. This Court has personal jurisdiction over Samsung because, among other things, Samsung has established minimum contacts within the forum such that the exercise of jurisdiction over Samsung will not offend traditional notions of fair play and substantial justice. For example, Samsung has placed products that practice and/or embody the claimed inventions of the Patents into the stream of commerce with the reasonable expectation and/or knowledge that purchasers and users of such products were located within this district. In addition, Samsung has sold, advertised, marketed, and distributed products in this district that practice the claimed inventions of the Patents. Samsung derives substantial revenue from the sale of infringing products distributed within the district, and/or expects or should reasonably expect its actions to have consequences within the district, and derive substantial revenue from interstate and international commerce.

**Answer:** For purposes of this action only, SEC and SEA do not contest personal jurisdiction. SEC and SEA admit that venue is permissible, for purposes of this action only, under 28 U.S.C. §§ 1391 and 1400, but deny that venue is proper or convenient.

The term "Samsung" in paragraph 6 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 6 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 6 and therefore deny them.

SEC and SEA deny the remaining allegations of paragraph 5 of the Amended Complaint.

## III. FACTUAL BACKGROUND

**7.** The name Papst has been closely associated with patents and the protection of intellectual property for over seventy years. Hermann Papst was an engineer and inventor who was responsible for over four hundred patents in a variety of technical fields. Mr. Hermann Papst's licensure of a patent pertaining to loudspeakers enabled him to launch Papst-Motoren GmbH & Co. KG—a business that generated over six hundred patents on in-house products such as small electric motors and cooling fans. In 1992, Papst-Motoren's patent portfolio was sold to Papst Licensing, a company founded by Mr. Hermann Papst's son, Mr. Georg Papst. Papst Licensing is a patent licensing company protecting its own and others' intellectual property rights. After Hermann Papst's death in 1981 and the passing of Georg Papst in 2012, the family business is now run by the third generation of Papsts.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 7 of the Amended Complaint and therefore deny them.

**8.** The '399 Patent was filed on March 3, 1998 and issued on October 22, 2002. The '746 Patent was filed on September 27, 2010 and issued on August 6, 2013. The '449 Patent was filed on August 15, 2002 and issued on May 17, 2005. The '144 Patent was filed on August 24, 2006 and issued on February 24, 2015. The '437 Patent was filed on August 24, 2006 and issued on November 17, 2015. The '399, '449, '746, '144 and '437 Patents are generally directed towards methods and systems for the transfer of data and in particular to interface devices for communication between a computer or host device and a data transmit/receive device from which data is to be acquired or with which two-way communication is to take place.

**Answer:** SEC and SEA admit that the '399 Patent states that the application for the '399 Patent was filed on March 3, 1998 and that its issue date was October 22, 2002. SEC and SEA further admit that the '449 Patent states that the application for the '449 Patent was filed on August 15, 2002 and that its issue date was May 17, 2005. SEC and SEA further admit that the '746 Patent states that the application for the '746 Patent was filed on September 27, 2010 and that its issue date was August 6, 2013. SEC and SEA further admit that the '144 Patent states that the application for the '144 Patent was filed on August 24, 2006 and that its issue date was February 24, 2015. SEC and SEA further admit that the '437 Patent states that the application

for the ’437 Patent was filed on August 24, 2006 and that its issue date was November 17, 2015. SEC and SEA deny the remaining allegations of paragraph 8 of the Amended Complaint.

**9.** Papst Licensing acquired the Patents through its predecessor-in-interest, Labortechnik Tasler GmbH—a pioneer and leader in the area of interface devices and software.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 9 of the Amended Complaint and therefore deny them.

**10.** Plaintiff Papst Licensing has obtained all substantial right and interest to the Patents, including all rights to recover for all past and future infringements thereof.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 10 of the Amended Complaint and therefore deny them.

**11.** On or around March 14, 2006, Papst Licensing notified Samsung of certain Papst Licensing patents, specifically including the ’399 Patent and ’449 Patent and its infringement thereof. On or around August 7, 2013, Papst Licensing notified Samsung of its infringement of the ’746 Patent. On or around March 13, 2015, Papst Licensing notified Samsung of its infringement of the ’144 Patent.

**Answer:** The term “Samsung” in paragraph 11 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 11 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 11 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 11 of the Amended Complaint.

**12.** On information and belief, Samsung has monitored Papst’s patent prosecution activities at least since being notified of its infringement. In all events, Samsung has knowledge of the ’399, ’449, ’746, ’144 and ’437 Patents by virtue of service of the original complaint and this amended complaint.

**Answer:** The term “Samsung” in paragraph 12 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 12 are directed to entities other than SEC and SEA, SEC

and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 12 and therefore deny them.

SEC and SEA admit that SEA has knowledge of the ’399, ’449, ’746, ’144 and ’437 Patents by virtue of service of the original complaint on December 9, 2015 and the amended complaint on March 28, 2016. SEC and SEA admit that SEC has knowledge of the ’399, ’449, ’746, ’144 and ’437 Patents by virtue of service of the amended complaint on March 28, 2016. SEC and SEA deny the remaining allegations of paragraph 12 of the Amended Complaint.

**13.** Samsung has infringed and continues to infringe the Papst Patents by making, selling, offering for sale, importing, and using products and software in an infringing manner, including but not limited to Samsung’s smartphone, mobile phone, tablet and media player products, as well as any other products operating in a substantially similar manner. Moreover, Samsung provides its customers with the accused software and instructs its customers to use the software in an infringing manner, including through its website at http://www.samsung.com/us/support/downloads.

**Answer:** The term “Samsung” in paragraph 13 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 13 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 13 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 13 of the Amended Complaint.

**14.** In addition, Samsung knowingly, actively induced and continues to knowingly actively induce (or is willfully blind to the) infringement of one or more of the Patents within this district by making, using, offering for sale, and selling infringing products, as well as by contracting with others to use, market, sell, and offer to sell infringing products, all with knowledge of the asserted Patents, and their claims, with knowledge that their customers will use, market, sell, and offer to sell infringing products in this district and elsewhere in the United States, and with the knowledge and specific intent to encourage and facilitate infringing sales and use of the products by others within this district and the United States by creating and disseminating promotional and marketing materials, instructional materials, and product manuals, and technical materials related to the infringing products.

**Answer:** The term “Samsung” in paragraph 14 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 14 are directed to entities other than SEC and SEA, SEC

and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 14 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 14 of the Amended Complaint.

**15.** Moreover, Samsung knowingly contributed to the infringement of one or more of the Patents by others in this district, and continues to contribute to the infringement of one or more of the Patents by others in this district by selling or offering to sell components of infringing products in this district, which components constitute a material part of the inventions of the Patents, knowing of the Patents and their claims, knowing those components to be especially made or especially adapted for use to infringe one or more of the Patents, and knowing that those components are not staple articles or commodities of commerce suitable for substantial non- infringing use.

**Answer:** The term "Samsung" in paragraph 15 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 15 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 15 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 15 of the Amended Complaint.

**16.** The limitations of claims of the Patents may be satisfied by hardware, software, and/or firmware, or any combination thereof, including without limitation: connection to a host computer, including an input/output (I/O) port (including a USB interface), a Bluetooth wireless connection and/or other physical layer connection where supported; circuitry for the connection of the USB interface to the logic board and processor; a processor; program memory, including the ability to store software instructions related to the operation of the device when capturing a photo and/or video, transferring photos and/or videos from the device to a host computer, as well as other functions associated with modern day cellular phones and/or smart phones; data storage memory, including the ability to store photos and/or videos captured by the device's digital camera in memory; one or more cameras (or image capture) devices; a sensor designed to transmit data, which includes the device's one or more CMOS arrays as well as an analog to digital converter, USB interface and other hardware, firmware and software related to the transmission of data; software that specially adapts the device to: cause at least one parameter which provides identification information regarding the Accused Devices to be automatically sent through the I/O port and to the multi-purpose interface of the computer; software that specially adapts the device to be compliant with or use the protocol specifications for Picture Transfer Protocol ("PTP"), Media Transfer Protocol ("MTP") and Mass Storage Device/Mass Storage Class ("MSD"), including being capable of receiving, understanding and responding to PTP, MTP and/or MSD commands when the I/O port is operatively interfaced with the host; software that specially adapts the device to execute at least one other instruction set stored in the program memory and thereby causes at least one file of digitized analog data to be transferred to the computer regardless of the identity of the manufacturer of the computer and without

requiring any user-loaded file transfer enabling software to be loaded on or installed in the computer at any time (collectively, "Components").

**Answer:** SEC and SEA deny the allegations of paragraph 16 of the Amended Complaint.

## IV. ALLEGED PATENT INFRINGEMENT

## COUNT I — ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,470,399

**17.** Papst Licensing is the assignee of the '399 Patent, entitled "Flexible Interface For Communication Between A Host And An Analog I/O Device Connected To The Interface Regardless The Type Of The I/O Device," and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 17 of the Amended Complaint and therefore deny them.

**18.** The '399 Patent is valid and enforceable.

**Answer:** SEC and SEA deny the allegations of paragraph 18 of the Amended Complaint.

**19.** Samsung has directly infringed and continues to infringe one or more claims of the '399 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing, using, offering for sale, and/or selling the claimed system and methods of the '399 Patent. At a minimum, Samsung has been, and now is, infringing claims of the '399 Patent by making, importing and/or using infringing systems and/or methods. Samsung's infringing products include, but are not limited to, Samsung's smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTP, MTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) ("'399 Infringing Products"). Papst Licensing alleges that each and every element is literally present in the '399 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

**Answer:** The term "Samsung" in paragraph 19 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 19 are directed to entities other than SEC and SEA, SEC

and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 19 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 19 of the Amended Complaint.

**20.** Samsung has indirectly infringed and continues to infringe the ’399 Patent by inducing the infringement of the ’399 Patent. With knowledge of the ’399 Patent, Samsung directs and aids its customers in using the ’399 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’399 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. See Exhibit 1 at 126 (instructing a user to “connect your phone to the computer with a USB cable”). See also Exhibit 2 at 136 (instructing a user to “connect your device to your computer using a compatible USB cable”) and Exhibit 3 at 31 (instructing the user to “connect the device to the computer using the USB cable” in order to connect the device “as a media device”). Samsung similarly instructs users of other ’399 Infringing Products to transfer data. When a user of the ’399 Infringing Products connects the product to a host computer based on Samsung’s instructions, the PTP[1], MTP[2], and/or MSD[3] transfer protocols are used by the ’399 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

**Answer:** The term “Samsung” in paragraph 20 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 20 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 20 and therefore deny them.

SEC and SEA admit that Exhibits 2-3 include the statements quoted in Paragraph 20. SEC and SEA deny the remaining allegations of paragraph 20 of the Amended Complaint.

**21.** Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’399 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’399 Infringing Products. Samsung knows that the Components of the ’399 Infringing Products: constitute a material part of the inventions claimed in the ’399 Patent; are especially made or adapted to infringe the ’399 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components

[1] Exhibit 1 at 126; Exhibit 3 at 31.
[2] Exhibit 1 at 126; Exhibit 3 at 31.
[3] Exhibit 2 at 135-136.

are used for or in systems that infringe one or more claims of the ’399 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

**Answer:** The term “Samsung” in paragraph 21 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 21 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 21 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 21 of the Amended Complaint.

**22.** Papst Licensing has been damaged as a result of Samsung’s infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer:** The term “Samsung” in paragraph 22 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 22 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 22 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 22 of the Amended Complaint.

## COUNT II — ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,895,449

**23.** Papst Licensing is the assignee of the ’449 Patent, entitled “Flexible Interface For Communication Between A Host And An Analog I/O Device Connected To The Interface Regardless The Type Of The I/O Device,” and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 23 of the Amended Complaint and therefore deny them.

**24.** The ’449 Patent is valid and enforceable.

**Answer:** SEC and SEA deny the allegations of paragraph 24 of the Amended Complaint.

**25.** Samsung has directly infringed and continues to infringe one or more claims of the ’449 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing using, offering for sale, and/or selling the claimed systems and methods. At a minimum, Samsung has been, and now is, infringing claims of the ’449 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung’s infringing products include, but are not limited to, Samsung’s smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications MSD and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) (“’449 Infringing Products”). Papst Licensing alleges that each and every element is literally present in the ’449 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

**Answer:** The term “Samsung” in paragraph 25 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 25 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 25 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 25 of the Amended Complaint.

**26.** Samsung has indirectly infringed and continues to infringe the ’449 Patent by inducing the infringement of the ’449 Patent. With knowledge of the ’449 Patent, Samsung directs and aids its customers in using the ’449 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’449 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. See Exhibit 1 at 126 (instructing a user to “attach your phone to the computer with a USB data cable”). See also Exhibit 2 at 136 (instructing a user to “connect your device to your computer using a compatible USB cable”) and Exhibit 3 at 31 (instructing the user to “connect the device to the computer using the USB cable” in order to connect the device “as a media device”). Samsung similarly instructs users of other ’449 Infringing Products to transfer data. When a user of the ’449 Infringing Products connects the product to a host computer based on Samsung’s instructions, the MSD[4] transfer protocol is used by the ’449 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

[4] Exhibit 2 at 135-136.

**Answer:** The term "Samsung" in paragraph 26 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 26 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 26 and therefore deny them.

SEC and SEA admit that Exhibits 1-3 include the statements quoted in Paragraph 26. SEC and SEA deny the remaining allegations of paragraph 26 of the Amended Complaint.

**27.** Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’449 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’449 Infringing Products. Samsung knows that the Components of the ’449 Infringing Products: constitute a material part of the inventions claimed in the ’449 Patent; are especially made or adapted to infringe the ’449 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the ’449 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

**Answer:** The term "Samsung" in paragraph 27 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 27 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 27 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 27 of the Amended Complaint.

**28.** Papst Licensing has been damaged as a result of Samsung’s infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer:** The term "Samsung" in paragraph 28 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 28 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the

allegations of paragraph 28 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 28 of the Amended Complaint.

**<u>COUNT III — ALLEGED INFRINGEMENT OF U.S. PATENT NO. 8,504,746</u>**

**29.** Papst Licensing is the assignee of the ’746 Patent, entitled “Analog Data Generating And Processing Device For Use With A Personal Computer,” and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

**<u>Answer:</u>** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 29 of the Amended Complaint and therefore deny them.

**30.** The ’746 Patent is valid and enforceable.

**<u>Answer:</u>** SEC and SEA deny the allegations of paragraph 30 of the Amended Complaint.

**31.** Samsung has directly infringed and continues to infringe one or more claims of the ’746 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing using, offering for sale, and/or selling the claimed systems and methods. At a minimum, Samsung has been, and now is, infringing claims of the ’746 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung’s infringing products include, but are not limited to, Samsung’s smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTP, MTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) (“’746 Infringing Products”). Papst Licensing alleges that each and every element is literally present in the ’746 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

**<u>Answer:</u>** The term “Samsung” in paragraph 31 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 31 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 31 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 31 of the Amended Complaint.

**32.** Samsung has indirectly infringed and continues to infringe the ’746 Patent by inducing the infringement of the ’746 Patent. With knowledge of the ’746 Patent, Samsung directs and aids its customers in using the ’746 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’746 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. See Exhibit 1 at 126 (instructing a user to “attach your phone to the computer with a USB data cable”). See also Exhibit 2 at 136 (instructing a user to “connect your device to your computer using a compatible USB cable”) and Exhibit 3 at 31 (instructing the user to “connect the device to the computer using the USB cable” in order to connect the device “as a media device”). Samsung similarly instructs users of other ’746 Infringing Products to transfer data. When a user of the ’746 Infringing Products connects the product to a host computer based on Samsung’s instructions, the PTP[5], MTP[6], and/or MSD[7] transfer protocols are used by the ’746 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

**Answer:** The term “Samsung” in paragraph 32 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 32 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 32 and therefore deny them.

SEC and SEA admit that Exhibits 1-3 include the statements quoted in Paragraph 32. SEC and SEA deny the remaining allegations of paragraph 32 of the Amended Complaint.

**33.** Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’746 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’746 Infringing Products. Samsung knows that the Components of the ’746 Infringing Products: constitute a material part of the inventions claimed in the ’746 Patent; are especially made or adapted to infringe the ’746 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the ’746 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

---

[5] Exhibit 1 at 126; Exhibit 3 at 31.
[6] Exhibit 1 at 126; Exhibit 3 at 31.
[7] Exhibit 2 at 135-136.

**<u>Answer:</u>** The term "Samsung" in paragraph 33 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 33 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 3 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 33 of the Amended Complaint.

**34.** Papst Licensing has been damaged as a result of Samsung's infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**<u>Answer:</u>** The term "Samsung" in paragraph 34 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 34 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 34 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 34 of the Amended Complaint.

## <u>COUNT IV — ALLEGED INFRINGEMENT OF U.S. PATENT NO. 8,966,144</u>

**35.** Papst Licensing is the assignee of the '144 Patent, entitled "Analog Data Generating And Processing Device Having A Multi-Use Automatic Processor," and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

**<u>Answer:</u>** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 35 of the Amended Complaint and therefore deny them.

**36.** The '144 Patent is valid and enforceable.

**<u>Answer:</u>** SEC and SEA deny the allegations of paragraph 36 of the Amended Complaint.

**37.** Samsung has directly infringed and continues to infringe one or more claims of the '144 Patent in this judicial district and elsewhere in the United States by, among other things,

making, having made, importing, using, offering for sale, and/or selling the claimed system and methods of the ’144 Patent. At a minimum, Samsung has been, and now is, infringing claims of the ’144 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung’s infringing products include, but are not limited to, Samsung’s smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTP, MTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) (“’144 Infringing Products”). Papst Licensing alleges that each and every element is literally present in the ’144 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

**Answer:** The term “Samsung” in paragraph 37 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 37 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 37 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 37 of the Amended Complaint.

**38.** Samsung has indirectly infringed and continues to infringe the ’144 Patent by inducing the infringement of the ’144 Patent. With knowledge of the ’144 Patent, Samsung directs and aids its customers in using the ’144 Infringing Products by the provision of its products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers as well as functionality embedded in the ’144 Infringed Products (including firmware and source code) with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. See Exhibit 1 at 126 (instructing a user to “attach your phone to the computer with a USB data cable”). See also Exhibit 2 at 136 (instructing a user to “connect your device to your computer using a compatible USB cable”) and Exhibit 3 at 31 (instructing the user to “connect the device to the computer using the USB cable” in order to connect the device “as a media device”). Samsung similarly instructs users of other ’144 Infringing Products to transfer data. When a user of the ’144 Infringing Products connects the product to a host computer based on Samsung’s instructions, the PTP[8], MTP[9], and/or MSD[10] transfer protocols are used by the ’144 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

**Answer:** The term “Samsung” in paragraph 38 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 38 are directed to entities other than SEC and SEA, SEC

[8] Exhibit 1 at 126; Exhibit 3 at 31.
[9] Exhibit 1 at 126; Exhibit 3 at 31.
[10] Exhibit 2 at 135-136.

and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 38 and therefore deny them.

SEC and SEA admit that Exhibits 1-3 include the statements quoted in Paragraph 38. SEC and SEA deny the remaining allegations of paragraph 38 of the Amended Complaint.

**39.** Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the ’144 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the ’144 Infringing Products. Samsung knows that the Components of the ’144 Infringing Products: constitute a material part of the inventions claimed in the ’144 Patent; are especially made or adapted to infringe the ’144 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the ’144 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

**Answer:** The term “Samsung” in paragraph 39 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 39 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 39 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 39 of the Amended Complaint.

**40.** Papst Licensing has been damaged as a result of Samsung’s infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer:** The term “Samsung” in paragraph 40 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 40 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 40 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 40 of the Amended Complaint.

## COUNT V — ALLEGED INFRINGEMENT OF U.S. PATENT NO. 9,189,437

**41.** Papst Licensing is the assignee of the ’437 Patent, entitled “Analog Data Generating And Processing Device For Use With A Personal Computer,” and holds all substantial rights in the same. Among other rights, Papst Licensing maintains the exclusive right to exclude others, the exclusive right to enforce, sue and recover damages for past and future infringements, and the exclusive right to settle any claims of infringement.

**Answer:** SEC and SEA are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 41 of the Amended Complaint and therefore deny them.

**42.** The ’437 Patent is valid and enforceable.

**Answer:** SEC and SEA deny the allegations of paragraph 42 of the Amended Complaint.

**43.** Samsung has directly infringed and continues to infringe one or more claims of the ’437 Patent in this judicial district and elsewhere in the United States by, among other things, making, having made, importing using, offering for sale, and/or selling the claimed systems and methods. At a minimum, Samsung has been, and now is, infringing claims of the ’437 Patent by making, having made, importing and/or using infringing systems and/or methods. Samsung’s infringing products include, but are not limited to, Samsung’s smartphone, mobile phone, tablet and media player products that are compliant with or use the protocol specifications PTPMTP, and/or MSD, and therefore use and/or are capable of using said protocols when connected to a host computer (e.g., via a Universal Serial Bus connection, Bluetooth wireless connection and/or another physical layer connection where supported) (“’437 Infringing Products”). Papst Licensing alleges that each and every element is literally present in the ’437 Infringing Products. To the extent not literally present, Papst Licensing reserves the right to proceed under the doctrine of equivalents.

**Answer:** The term “Samsung” in paragraph 43 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 43 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 43 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 43 of the Amended Complaint.

**44.** Samsung has indirectly infringed and continues to infringe the ’437 Patent by inducing the infringement of the ’437 Patent. With knowledge of the ’437 Patent, Samsung directs and aids its customers in using the ’437 Infringing Products by the provision of its

products and software, and related equipment and provision of instruction (including, by way of example, the tutorials, user guides, product guides, and other documentation located at http://www.samsung.com/us/support/downloads) to customers with knowledge that the induced acts constitute patent infringement. For example, Samsung instructs users to connect the phone to a computer using a USB cable. See Exhibit 1 at 126 (instructing a user to "attach your phone to the computer with a USB data cable"). See also Exhibit 2 at 136 (instructing a user to "connect your device to your computer using a compatible USB cable") and Exhibit 3 at 31 (instructing the user to "connect the device to the computer using the USB cable" in order to connect the device "as a media device"). Samsung similarly instructs users of other '437 Infringing Products to transfer data. When a user of the '437 Infringing Products connects the product to a host computer based on Samsung's instructions, the PTP[11], MTP[12], and/or MSD[13] transfer protocols are used by the '437 Infringing Products to transfer data in an infringing manner. Samsung possesses specific intent to encourage infringement by its customers.

**Answer:** The term "Samsung" in paragraph 44 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 44 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 4 and therefore deny them.

SEC and SEA admit that Exhibits 1-3 include the statements quoted in Paragraph 44. SEC and SEA deny the remaining allegations of paragraph 44 of the Amended Complaint.

**45.** Samsung has contributed to the infringement of, and continues to contribute to the infringement of, one or more claims of the '437 Patent under 35 U.S.C. § 271(c) and/or 271(f), either literally and/or under the doctrine of equivalents, by selling, offering for sale, and/or importing into the United States, the '437 Infringing Products. Samsung knows that the Components of the '437 Infringing Products: constitute a material part of the inventions claimed in the '437 Patent; are especially made or adapted to infringe the '437 Patent; are not staple articles or commodities of commerce suitable for non-infringing use, but rather the Components are used for or in systems that infringe one or more claims of the '437 Patent. The hardware and/or software Components are not a staple article or commodity of commerce because they are specifically designed to perform the claimed functionality. Any other use of the hardware and/or software Components would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

**Answer:** The term "Samsung" in paragraph 45 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 45 are directed to entities other than SEC and SEA, SEC

[11] Exhibit 1 at 126; Exhibit 3 at 31.
[12] Exhibit 1 at 126; Exhibit 3 at 31.
[13] Exhibit 2 at 135-136.

and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 45 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 45 of the Amended Complaint.

**46.** Papst Licensing has been damaged as a result of Samsung's infringing conduct. Samsung is thus liable to Papst Licensing in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer:** The term "Samsung" in paragraph 46 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 46 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 46 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 46 of the Amended Complaint.

## V. WILLFULNESS

**47.** Papst Licensing alleges upon information and belief that Samsung has knowingly or with reckless disregard willfully infringed the '399, '449, '746 and '144 Patents. Samsung's knowledge includes knowledge of the '399, '449, '746 and '144 Patents by virtue of Papst Licensing having notified Samsung of its infringing acts. Samsung acted with knowledge of the '399, '449, '746 and '144 Patents and despite an objectively high likelihood that its actions constituted infringement of Papst Licensing's valid patent rights.

**Answer:** The term "Samsung" in paragraph 47 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 47 are directed to entities other than SEC and SEA, SEC and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 47 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 47 of the Amended Complaint.

**48.** This objectively-defined risk was either known or so obvious that is should have been known to Samsung. Papst Licensing seeks enhanced damages pursuant to 35 U.S.C. §284.

**Answer:** The term "Samsung" in paragraph 48 is undefined, vague, and ambiguous. To the extent the allegations of paragraph 48 are directed to entities other than SEC and SEA, SEC

and SEA lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of paragraph 48 and therefore deny them. SEC and SEA deny the remaining allegations of paragraph 48 of the Amended Complaint.

## VI. JURY DEMAND

**49.** Papst Licensing demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

**Answer:** SEC and SEA join in Papst Licensing's demand to a trial by jury of all matters to which they are entitled to trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Papst Licensing prays for judgment and seeks relief against Samsung as follows:

a. Judgment that one or more claims of U.S. Patent Nos. 6,470,399; 6,895,449; 8,504,746; 8,966,144; and 9,189,437 have been infringed, either literally and/or under the doctrine of equivalents, by Samsung;

b. Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Samsung of the Patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

c. That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

d. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

**Answer:** To the extent any response is required to Papst's Prayer for Relief, SEC and SEA deny that Papst is entitled to any of the relief requested in its Prayer for Relief, or any other relief, against SEC and SEA. SEC and SEA request that the Court instead grant judgment and the following relief to SEC and SEA:

a) A judgment in favor of SEC and SEA and against Papst on all claims for relief and all defenses;

b) A judgment finding this to be an exceptional case within the meaning of 35 U.S.C. § 285 and awarding SEC and SEA all of their attorney fees and expenses and costs; and

c) A judgment awarding SEC and SEA all other remedies, legal, equitable, or otherwise, which the Court deems just and warranted by the facts, evidence, and circumstances.

* * *

## DEFENSES (AFFIRMATIVE OR OTHERWISE)

**50.** SEC and SEA, by counsel, hereby plead and give notice of the following defenses, whether affirmative or otherwise, without admitting or acknowledging that SEC and SEA bear the burden of proof as to any of them or that any must be pleaded as defenses. SEC and SEA specifically reserve the right to modify or amend these defenses or assert additional defenses or counterclaims as discovery warrants.

### Defense No. 1: Non-Infringement

**51.** SEC and SEA do not infringe and have not infringed any valid and enforceable claim of the Patents-in-Suit, either literally or under the doctrine of equivalents, nor have they contributed to the infringement of or actively induced others to infringe the Patents-in-Suit.

### Defense No. 2: No Willfulness

**52.** SEC and SEA have not willfully infringed any claim of the Patents-in-Suit.

### Defense No. 3: Invalidity

**53.** One or more claims of the Patents-in-Suit is invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including, without limitation, §§ 101, 102, 103, 112, 119 and/or 120.

### Defense No. 4: Unenforceability

**54.** The ’399, ’449, ’746, ’144, and ’437 Patents are unenforceable by reason of inequitable conduct before the United States Patent and Trademark Office (“USPTO”). SEC and

SEA hereby incorporate by reference the allegations of their Counterclaims as though fully set forth herein.

**Defense No. 5: Laches, Waiver, Unclean Hands, and/or Estoppel**

**55.** Papst's claims are barred, in whole or in part, by laches, waiver, and/or estoppel as a result of Papst's lengthy and intentional delay in filing suit against SEC and SEA. On February 1, 2011, approximately fifty-eight months before Papst filed this litigation, Judge Rosemary Collyer of the U.S. District Court of the District of Columbia denied Papst's motion to amend its complaint against Samsung Techwin Co., Ltd. (a separate publicly-traded Korean company) and its subsidiary in Civ. Action No. 07-2088, which is part of Misc. Action No. 07-493 and MDL Docket No. 1880, to add claims concerning the '399 and '449 patents against SEC, SEA, and STA. [Memorandum Opinion Denying Papst's Motion to Amend Complaint, Docket No. 424]. Judge Collyer found that Papst "could have brought suit against the Samsung Electronics Entities [SEC, SEA, and STA]" before June 2008 and that Papst "was not diligent in moving to amend the complaint" when it waited to file its motion to amend for at least more than a year after it had knowledge of its alleged claims against SEC, SEA, and STA. [*Id*. at 4-5 and 8.] During a related hearing, Judge Collyer stated that, if Papst chose to sue SEC, SEA, and STA, then Papst "should sue them in separate lawsuits." On information and belief, in response to the Court's decision, Papst deliberately chose not to pursue its alleged claims against SEC, SEA, and STA in 2011. Papst, through misleading conduct, led SEC and SEA to reasonably infer that Papst did not intend to enforce its patents against SEC and SEA. SEC and SEA relied to their detriment on Papst's non-enforcement activity. SEC and SEA have been materially prejudiced by Papst's unreasonable and unjustified delay in filing its complaint in this litigation and will be materially prejudiced if Papst is allowed to proceed with its claims. Such prejudice was both

evidentiary and economic. For example, as Papst admitted in its Amended Complaint, Georg Papst died in 2012. Mr. Papst had discoverable information concerning potential damages (including the negotiation of a reasonable royalty) and as one of the "principals, officers and/or employees of Papst" was "likely to have discoverable information concerning Papst's ownership of the '449 patent and '399 patent," as admitted by Papst in its Rule 26(a)(1) Initial Disclosures in the District of Columbia. In addition, during Papst's delay, SEC and SEA continued to invest in technology that Papst now accuses. Discovery likely will demonstrate additional prejudice.

**56.** Papst also is estopped, based on statements, representations, and admissions made regarding one or more of the Patents-in-Suit during the course of other litigations involving one or more of the Patents-in-Suit, from asserting that SEC and SEA have infringed, directly or indirectly, any claim of the Patents-in-Suit, either literally or under the doctrine of equivalents.

**57.** Discovery may demonstrate additional evidence that Papst's claims are barred, in whole or in part, by laches, waiver, unclean hands, and/or estoppel.

**<u>Defense No. 6: License, Covenant Not to Sue, and Exhaustion</u>**

**58.** Discovery may demonstrate that Papst's requested relief is barred or otherwise limited as a result of an express and/or implied license, a covenant not to sue, the doctrine of patent exhaustion, the "first sale" doctrine, and/or restrictions on double recovery.

**<u>Defense No. 7: Limitations on Damages and Costs</u>**

**59.** Papst's recovery for alleged infringement of the Patents-in-Suit, if any, is limited by Title 35 of the U.S. Code.

**60.** Papst's recovery for alleged infringement of the Patents-in-Suit, if any, is limited to any alleged infringement committed no more than six years prior to the filing of its Complaint, pursuant to 35 U.S.C. § 286.

**61.** Papst failed to provide adequate notice to SEC and SEA of alleged infringement and is thus barred, in whole or in part, under 35 U.S.C. § 287 from recovering damages prior to the date of the filing of the Complaint.

**62.** On information and belief, Papst is barred, in whole or in part, from recovering damages under 35 U.S.C. § 287 because it and/or its licensees have not consistently marked products that allegedly practice one or more of the Patents-in-Suit.

**63.** Papst is or may be barred by 35 U.S.C. § 288 from recovering costs associated with its action.

**64.** Papst's recovery for alleged infringement of the Patents-in-Suit, if any, may be barred at least in part by 28 U.S.C. § 1498.

**Defense No. 8: Prosecution History Estoppel**

**65.** Papst is estopped, based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the Patents-in-Suit and/or related patent applications, from asserting that SEC and SEA have infringed, directly or indirectly, any claim of the Patents-in-Suit, either literally or under the doctrine of equivalents.

**Defense No. 9: Patent Misuse**

**66.** Discovery may demonstrate that Papst's claims are barred in whole or in part by the equitable doctrine of patent misuse.

* * *

## COUNTERCLAIMS

Counterclaim plaintiffs SEC and SEA, for their complaint against counterclaim defendant Papst Licensing GmbH & Co. KG, allege as follows:

### <u>The Parties</u>

**67.** Counterclaimant SEC is a corporation organized under the laws of the Republic of Korea, having a place of business at 129 Samsung-ro (Maetan-dong), Yeongtong-gu, Suwon-Si, Gyeonggi-do 443-742, Korea.

**68.** Counterclaim SEA is a New York corporation having a place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

**69.** Based on the assertions of Paragraph 1 of the Amended Complaint, Papst Licensing is a company existing under the laws of the Federal Republic of Germany, with its principal place of business located at Bahnofstrasse 33, 78112 St. Georgen, Germany.

### <u>Jurisdiction and Venue</u>

**70.** SEC and SEA's Counterclaims arise under the United States Patent Act, 35 U.S.C. § 1 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has subject matter jurisdiction over the Counterclaims under 28 U.S.C. §§ 1331 and 1338. This Court has personal jurisdiction over Papst at least by virtue of Papst's filing of the Complaint and Amended Complaint against SEC and SEA in this Court, and venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b).

### <u>Count I: Declaration of Noninfringement</u>

**71.** SEC and SEA repeat and incorporate by reference the allegations contained in the preceding paragraphs of their Counterclaims as if fully set forth herein.

**72.** On April 4, 2015, Papst filed its First Amended Complaint naming SEC and SEA as defendants, and among other things, alleging infringement of the ’399, ’449, ’746, ’144, and ’437 patents (the “Patents-in-Suit”).

**73.** The Complaint alleges that SEC and SEA infringe the Patents-in-Suit by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products that use the protocol specifications PTP, MTP, and/or MSD.

**74.** SEC and SEA have not infringed, contributed to the infringement of, or induced any infringement of any valid and enforceable claim of the Patents-in-Suit.

**75.** An actual and justiciable controversy exists between counterclaim plaintiffs SEC and SEA and counterclaim defendant Papst regarding Papst’s allegations of infringement of the Patents-in-Suit.

**76.** Under 28 U.S.C. §§ 2201 and 2202, SEC and SEA are entitled to a declaratory judgment that SEC and SEA have not infringed, contributed to the infringement of, or induced any infringement of any valid and enforceable claim of the Patents-in-Suit.

**Count II: Declaration of Invalidity**

**77.** SEC and SEA repeat and incorporate by reference the allegations contained in the preceding paragraphs of their Counterclaims as if fully set forth herein.

**78.** The claims of the Patents-in-Suit are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including, without limitation, §§ 101, 102, 103, 112, 119 and/or 120.

**79.** An actual and justiciable controversy exists between counterclaim plaintiffs SEC and SEA and counterclaim defendant Papst regarding the validity of the Patents-in-Suit.

**80.** Under 28 U.S.C. §§ 2201 and 2202, SEC and SEA are entitled to a declaratory judgment that the claims of the Patents-in-Suit are invalid.

**Count III: Declaration of Unenforceability**

**81.** SEC and SEA repeat and incorporate by reference the allegations contained in the preceding paragraphs of their Counterclaims as if fully set forth herein.

**82.** Papst contends that the Patents-in-Suit are valid and enforceable.

**83.** SEC and SEA deny Plaintiff's contention and alleges that the '399, '449, '746, '144, and '437 Patents are unenforceable due to inequitable conduct committed during prosecution, the particular facts and circumstances of which are set forth below.

**84.** Michael Tasler is the sole named inventor of the '399, '449, '746, '144, and '437 Patents.

**85.** Donald Duft, James Graziano, Dan Cleveland, Jr., Michael Setter, William Wilbar, Tomas Swenson, Curtis Vock, Kirk Williams, Steven Weinrieb, and Carl Forest of the firm Duft, Graziano & Forest, P.C. prosecuted the applications that led to the '399 and '449 Patents.

**86.** Michael Tasler filed non-provisional application No. 09/331,002 on June 14, 1999, which issued as the '399 Patent on October 22, 2002.

**87.** Michael Tasler filed application No. 10/219,105 on August 15, 2002. Application No. 10/219,105 is a division of application No. 09/331,002, now the '399 Patent. Application No. 10/219,105 issued as the '449 Patent on May 17, 2005.

**88.** Michael Tasler filed application No. 12/891,443 on September 27, 2010. Application No. 12/891,443 is a continuation of application No. 928,283, filed on October 30, 2007, now abandoned, which is a continuation of application No. 11/467,073, filed on August

24, 2006, and a continuation of application No. 11/078,778, filed on March 11, 2005, now abandoned, and a continuation of application No. 10/219,105, filed on August 15, 2002, now the ’449 Patent, which is a division of application No. 09/331,002, now the ’399 Patent. Application No. 12/891,443 issued as the ’746 patent on August 6, 2013.

**89.** Michael Tasler filed application No. 11/467,073 on August 24, 2006. Application No. 11/467,073 is a continuation of application No. 11/078,778, filed on March 11, 2005, now abandoned, and a continuation of application No. 10/219,105, filed on August 15, 2002, now the ’449 Patent, which is a division of application No. 09/331,002, filed on June 14, 1999, now the ’399 Patent. Application No. 11/467,073 issued as the ’144 Patent on February 24, 2015.

**90.** Michael Tasler filed application No. 11/467,092 on August 24, 2006. Application No. 11/467,092 is a continuation of application No. 11/078,778, filed on March 11, 2005, now abandoned, which is a continuation of application No. 10/219,105, filed on August 15, 2002, now the ’449 Patent, which is a division of application No. 09/331,002, filed on June 14, 1999, now the ’399 Patent. Application No. 11/467,092 issued as the ’437 Patent on November 17, 2015.

**91.** The ’399, ’449, ’746, ’144, and ’437 Patents all claim priority to non-provisional application No. 09/331,002 filed on June 14, 1999.

**92.** Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the United States Patent and Trademark Office (“USPTO”). The duty of candor and good faith includes a duty to disclose to the USPTO all information known to the individual to be material to patentability. The duty of candor and good faith extends to each inventor named in the application, each attorney who prepares or

prosecutes the application, and every other person substantively involved in the preparation or prosecution of the application.

**93.** The withholding of material prior art with the intent to deceive the USPTO is a violation of the duty of disclosure under 37 C.F.R. § 1.56 and constitutes inequitable conduct.

**94.** Michael Tasler, Donald Duft, James Graziano, Dan Cleveland, Jr., Michael Setter, William Wilbar, Tomas Swenson, Curtis Vock, Kirk Williams, Steven Weinrieb, and Carl Forest, and/or others substantively involved in the prosecution of the ’399, ’449, ’746, ’144, and ’437 Patents owed the USPTO a duty of candor and good faith during the prosecution of the ’399, ’449, ’746, ’144, and ’437 Patents.

**95.** The duty to disclose was a continuing one, continuing until and through the date of issuance of the ’399, ’449, ’746, ’144, and ’437 Patents.

**96.** On April 27, 1999, Michael Tasler executed and filed with the USPTO a Power of Attorney, wherein Michael Tasler acknowledged his duty under 37 C.F.R. § 1.56 to disclose all information known to them to be material to patentability. This Power of Attorney was filed with the USPTO for the ’399 and ’449 Patents.

**97.** On information and belief, Michael Tasler, Donald Duft, James Graziano, Dan Cleveland, Jr., Michael Setter, William Wilbar, Tomas Swenson, Curtis Vock, Kirk Williams, Steven Weinrieb, and Carl Forest, and/or others substantively involved in the prosecution of the ’399, ’449, ’746, ’144, and ’437 Patents were aware of information material to the patentability of the claims of the ’399, ’449, ’746, ’144, and ’437 Patents and withheld that information from the USPTO with the intent to deceive the USPTO.

**98.** In or about 1995 and 1996, Michael Tasler published a thesis titled “*Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe*

*Microscopy*" (the "Thesis"). The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

**99.** On information and belief, the Thesis was made publicly available at least through publication in December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in August 1996 by the University of Texas in the Online Computer Library Center (see Thesis, p. 87), before the filing of the application resulting in the '399 and '449 Patents, and is therefore prior art to the '399 and '449 Patents.

**100.** Mr. Tasler, as the author of the Thesis, was aware of the publication and cataloguing of the Thesis.

**101.** The Thesis is highly material to the patentability of the '399 and '449 Patents because a reasonable examiner would not have allowed the claims had the examiner been aware of the undisclosed Thesis during prosecution. A reasonable examiner would have considered the information in the Thesis highly material in examining at least claim 1 of the '399 Patent and claim 1 of the '449 Patent because of the similarity of the subject matter involved, and the disclosure in the Thesis of numerous elements found in those claims. The Thesis is directed to an interface device that facilitates communication between a scanning tunneling microscope and a PC using the PC's industry-standard printer port. [Thesis, pp. 1, 19]. The Thesis attempts to solve the same problem as the patents-in-suit. For example:

> Not yet mentioned is the load of information which must be handled by the master unit of the acquisition system, which in our case is an IBM compatible PC. Although the processor of a modem PC might be fast enough to handle this amount of data, it is impossible to get it all in and out in time through any standard PC port. Thus a secondary device is to be designed, that takes over the complete SPM control, but that itself is driven by a master PC. In this case only the starting conditions and the final results must be send [sic] and received by the PC.

[Thesis, p. 14].

> It is an object of the present invention to provide an interface device for communication between a host device and a data transmit/receive device whose use is host device independent and which delivers a high data transfer rate.

['399 Patent, col. 3, lines 24-27; '449 Patent, col. 3, lines 20-24].

**102.** The overlapping subject matter between the Thesis and the '399, '449, '144, '746, and '437 Patents is extensive. For example, the Thesis discloses that the "Universal Data Acquisition and Control System for Scanning Probe Microscopy" is an interface that connects to the PC through the standard printer port and facilitates communication of analog data generated by a data transmitter. *See, e.g.*, Thesis, p. 19; '399 Patent, abstract; col. 4, lines 40-44; col. 12, lines 42-46; '449 Patent, abstract; col. 3, lines 44-48; col. 9, lines 27-32; '746 Patent, abstract; col. 3, lines 49-53; col. 11, lines 48-57; '144 Patent, abstract; col. 3, lines 51-56; col. 11, lines 57-58; '437 Patent, abstract; col. 3, lines 51-56; col. 11, lines 57-58. The interface described in the Thesis further comprises a digital signal processor (*e.g.*, the TMS320C50), *see, e.g.*, Thesis, p. 14; '399 Patent, col. 12, line 48; '449 Patent, col. 11, line 51; '746 Patent, col. 11, line 61 – col. 12, line 4; '144 Patent, col. 11, line 63 – col. 12, line 3; '437 Patent, col. 11, line 62 – col. 12, line 5); a memory (*see, e.g.*, Thesis, p. 14; '399 Patent, col. 12, line 49; '449 Patent, col. 11, line 52; '746 Patent, col. 11, line 58; '144 Patent, col. 11, lines 60-61; '437 Patent, col. 11, lines 60-61); a first connecting device for interfacing with the PC through the PC's standard printer port (*see, e.g.*, Thesis, p. 15; '399 Patent, col. 12, lines 50-52; '449 Patent, col. 11, lines 54-56; '746 Patent, col. 8, lines 37-54; '144 Patent, col. 8, lines 42-59; '437 Patent, col. 8, lines 42-59); a second connecting device (*e.g.*, the TLC320AC01) for connecting the interface device with the data transmit/receive device (the microscope) and converting analog data into digital data (*see, e.g.*, Thesis, pp. 15, 23; '399 Patent, col. 12, lines 54-60; '449 Patent, col. 11, lines 57-58; '746

Patent, col. 8, line 55 – col. 9, line 3; ’144 Patent, col. 8, line 60 – col. 9, line 8; ’437 Patent, col. 8, line 60 – col. 9, line 8); a sampling circuit (*e.g.*, part of the TLC320AC01) for sampling the analog data (*see, e.g.*, Thesis, pp. 15, 23; ’399 Patent, col. 12, lines 56-59; ’449 Patent, col. 8, lines 51-64; ’746 Patent, col. 9, lines 34-49; ’144 Patent, col. 9, lines 41-52; ’437 Patent, col. 9, lines 41-52); and command interpreters (*i.e.*, communication software) for interpreting instructions and inquiries from the host computer (*see*, *e.g.*, Thesis, pp. 29-31; ’399 Patent, col. 12, lines 61-64; ’449 Patent, col. 5, lines 48-67; ’746 Patent, col. 5, line 59 – col. 6, line 10; ’144 Patent, col. 5, line 62 – col. 6, line 13; ’437 Patent, col. 5, line 62 – col. 6, line 13).

**103.** Mr. Tasler, and on information and belief, others substantially involved in the prosecution of the application resulting in the ’399 and ’449 patents were aware of or should have been aware of the Thesis and its contents during the time that the application resulting in the ’399 and ’449 patents was pending before the USPTO.

**104.** Mr. Tasler submitted an information disclosure statement on June 14, 2009 with the filing of non-provisional application No. 09/331,002 (which issued as the ’399 patent, and a divisional application of which issued as the ’449 patent), and a supplemental information disclosure statement on October 4, 2001, neither of which disclosed the Thesis. During the time that the application resulting in the ’399 and ’449 patents was pending, the Thesis was never disclosed to the USPTO.

**105.** On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the ’399 and ’449 patents intentionally failed to disclose the Thesis with intent to deceive or mislead the USPTO, and/or acted in reckless disregard of their duty to disclose material information.

**106.** For the foregoing reasons, the ’399 and ’449 patents are unenforceable due to inequitable conduct in withholding material prior art with the intent to deceive the USPTO.

**107.** Furthermore, because the ’399 and ’449 patents are unenforceable due to inequitable conduct in failing to disclose material prior art with the intent to deceive the USPTO, the ’746, ’144, and ’437 patents—which are continuations of the application that issued as the ’399 and ’449 patents—are unenforceable under the doctrine of infectious unenforceability. Indeed, the inequitable conduct in the prosecution of the ’399 and ’449 parent patents has an immediate and necessary relation to the enforcement of the ’746, ’144, and ’437 patents. The Patents-in-Suit share a common specification, and are, according to Papst’s Amended Complaint, “generally directed towards methods and systems for the transfer of data and in particular to interface devices for communication between a computer or host device and a data transmit/receive device from which data is to be acquired or with which two-way communication is to take place.” [Amended Complaint, ¶ 8]. Furthermore, as illustrated in Paragraph 102 of these Counterclaims, the claimed subject matter of the Patents-in-Suit overlaps substantially. Accordingly, each of the ’746, ’144, and ’437 patents are unenforceable due to their immediate and necessary relation to the patentee’s inequitable conduct during prosecution of the ’399 and ’449 patents.

**108.** This is an exceptional case under 35 U.S.C. § 285 because Papst filed its Complaint and Amended Complaint with knowledge of the facts stated in this Counterclaim.

**109.** An actual and justiciable controversy exists between counterclaim plaintiffs SEC and SEA and counterclaim defendant Papst regarding the enforceability of the Patents-in-Suit.

**110.** Under 28 U.S.C. §§ 2201 and 2202, SEC and SEA are entitled to a declaratory judgment that the Patents-in-Suit are unenforceable.

## Prayer for Relief

WHEREFORE, SEC and SEA pray for judgment as follows:

a) A judgment in favor of SEC and SEA and against Papst on all claims for relief and all defenses;

b) A judgment in favor of SEC and SEA on all of their Counterclaims;

c) A declaration that SEC and SEA have not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claim of the ’399, ’449, ’746, ’144, and ’437 patents;

d) A declaration that the claims of the ’399, ’449, ’746, ’144, and ’437 patents are invalid ;

e) A judgment finding this to be an exceptional case within the meaning of 35 U.S.C. § 285 and awarding SEC and SEA all of their attorney fees and expenses and costs of litigation, including expert witness fees;

f) A judgment limiting or barring Papst’s ability to enforce the ’399, ’449, ’746, ’144, and ’437 patents in equity; and

g) A judgment awarding SEC and SEA all other remedies, legal, equitable, or otherwise, which the Court deems just and warranted by the facts, evidence, and circumstances.

## Jury Demand

SEC and SEA demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: 11 April 2016

/s/ *Patrick J. Kelleher*

Patrick J. Kelleher
IL ARDC No. 6216338
Carrie A. Beyer
IL ARDC No. 6282524
**DRINKER BIDDLE & REATH LLP**
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000
patrick.kelleher@dbr.com
carrie.beyer@dbr.com

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of April 2016, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and that all counsel of record who are deemed to have consented to electronic service are being served via the CM/ECF system pursuant to Local Rule CV-5(a)(3).

/s/ Patrick J. Kelleher
Patrick J. Kelleher